MARY M. WENDELL v. SIEGFRIED HIGHSTONE, JAMES A. MCDONALD AND JOSIAH E. WENDELL.

*Mortgagee's lien—Cost of redemption from prior mortgage—Additional security—Opening case on hearing for further proofs.*

1. The cost to which the assignee of a second mortgage is put to redeem from the foreclosure of the first is a necessary outlay in aid of the assigned security, and the assignee is entitled to hold the assignment as security for it, but not to make it a personal charge against the assignor.

2. A court of chancery may sometimes award issues or other modes of inquiry, in order to satisfy its own conscience, where the testimony on well-defined issues is conflicting.

3. After the proofs in a chancery cause have been taken, especially if they have been taken in open court, it is not proper upon the hearing to open the case generally for the reception of further proofs, nor to open it at all without special reasons, and then usually for the admission only of formal or documentary evidence, or of testimony that has been overlooked by excusable inadvertence.

4. One who has secured another's debt is entitled to the benefit of any further security which the lien-holder obtains from the debtor ; and if the latter security consists of a chattel mortgage and the lien-holder disposes of the property which it covers, for his own benefit and without the consent of the person giving the first security, the latter is released, to the extent, at least, of the property so disposed of. And its proceeds must be first applied to the satisfaction of the oldest mortgage if the securities have been so confused by the lien-holder as to make it impossible to distinguish between them.

Appeal from Mackinac. (Steere, J.) Jan. 25.—Feb. 6.

BILL to obtain release of securities. Complainant appeals. Reversed.

*Mark Norris* and *Norris & Uhl* for complainant. After proofs are closed in equity further proofs cannot be taken without a showing of cause : *Hamersly v. Lambert* 2 Johns. Ch. 432 ; *Boyardus v. Trinity Church* 4 Sandf. Ch. 369 ; *McClung v. McClung* 40 Mich. 496 ; *Slater v. Breese* 36 Mich. 90 ; *Abbott v. Alsdorf* 19 Mich. 161 ; *Thayer v. Swift* Walk. Ch. 384

*P. N. Packard, Chas. R. Brown* and *E. D. Barry* for defendants..

CAMPBELL, J. The bill in this case was filed by complainant to obtain the release of certain securities given by her to Highstone to obtain credit for the other defendants who were hotel owners at Mackinaw. In July, 1878, they desired to obtain furniture for the St. Cloud Hotel to be purchased at places in the Lower Peninsula, and she gave Highstone an assignment of a note and mortgage made by her brother Josiah for $2000 and about $300 interest accrued, and her own mortgage for $1000 at ten per cent. interest. These two securities she claims, and in our opinion truly, to have been given to secure only such purchases as should be made and were made in Detroit and Grand Rapids, and not any other dealings with Highstone.

In August, 1879, she gave Highstone a further mortgage for $775, to secure outlays on a cottage to be used with the hotel. We agree with the court below that nothing was ever shown to have created any liability under this latter mortgage.

The immediate occasion of this bill was the proceeding by Highstone to foreclose by advertising under the statute the securities of July, 1878. And the ground of complaint is that by receipt of money and by various dealings with the other defendants and their property, she is entitled to a discharge. She prays an accounting and redemption, and the release of securities as her rights appear.

The mortgage from Josiah Wendell to complainant was a second mortgage, there being an earlier one given to one McCann, which was foreclosed, and which Highstone redeemed to save the security. As this was a necessary outlay and in aid of the assigned security, defendant Highstone was entitled to hold the assignment as security for it, but not to make it a personal charge on complainant.

The main dispute arises out of dealings by Highstone with his co-defendants, and payments and property received by him from them, which complainant insists on as discharging her.

Before the dealings of July, 1878, Highstone had some pecuniary dealings with Wendell and McDonald, and he subsequently furnished them some furniture not purchased below, and considerable supplies. He received money and other payments, and some mortgages. Immediately after the arrangement with complainant he took from his co-defendants a chattel mortgage for $2500, the main purpose of which, and probably the only purpose, was to secure the purchase price and a bonus for the furniture obtained below. In September, 1878, he took a further furniture mortgage for $310, and in July, 1879, a still further one for $1275, which covered, as possibly the second mortgage did, some new furniture sold by himself. Some other securities we need not refer to.

Afterwards, by some arrangement with Wendell and McDonald, to which complainant was not a party, he took possession of the furniture mortgaged, and when the bill was filed, had, as he claimed, disposed of most of it at private sale, and then had on hand what was worth at cash value, as he claimed in his answer, about $450. The court below had some difficulty in tracing out all the sales and receipts definitely, but there can be no reasonable doubt of the actual results exceeding $3000, beyond any other receipts of money from other sources.

On the original hearing, which was on proofs in open court, taken under an interlocutory order defining the issues, the circuit judge, instead of making a final decree, made an order reciting that deeming it impossible to find the sum realized by defendant on the furniture, it was referred to the circuit court commissioner to take proofs upon that point, and upon such other points as the counsel for the respective parties might deem material, according to the rules and practice of the court, and report the same to the court. Defendants' counsel then entered a general order to take proofs, and defendant Highstone was presented and examined before the commissioners and gave testimony as to various payments and applications of payment to which he had not before fully alluded, and gave various lists of property sold, but without any very tangible explanation.

Complainant's counsel treated this proceeding as unauthorized, and paid no attention to it.

We do not think this order was warranted. There are cases where upon particular issues well defined and on conflicting testimony, a court is warranted in awarding issues or other modes of inquiry for the satisfying of its own conscience. But the only other cases where further proofs are allowed at the hearing are in general, at least, cases where the proof is merely formal and documentary, or cases where by some excusable inadvertence some testimony has been overlooked. 1 Barb. Ch. Pr. 322. But it is not proper on the hearing to open the case generally, or to open it without special reasons at all. It is the duty of parties to furnish their proofs before hearing, and the case must be very particular where they can be allowed to do so after they have introduced all that they regarded as necessary before hearing.

In the present case the particular difficulty met by the court was not on any distinct question of fact on which the testimony was in conflict, but upon a matter which was so plainly within the controversy as not to be overlooked, and so entirely within the defendant's means of proof as to be open to no misapprehension on his part. And the opening of the entire case was, under the circumstances, not sustainable on precedent or usage. It is further to be considered that the case had been set down for the examination of witnesses in open court, and not only were the parties entitled to that mode of examination in the presence of the judge, but that method of hearing furnishes means for the production of testimony from time to time as seems expedient.

The question then arises, how the case stood on its merits. It is certain that when Highstone, not content with complainant's security, undertook to get distinct security for the same debts, she became entitled to have them faithfully applied for her benefit. And when, without her consent, he departed from the ordinary usage and appropriated the articles mortgaged to his own disposal, he released her, either entirely or to the extent of the property. Before the hearing, if he desired to reduce this pre-

sumptive satisfaction it devolved on him to show clearly and affirmatively such facts as would so reduce his liability. The statements of accounts are not clear or very intelligible, and there is a lack of testimony to indicate that the whole debt which was secured by her, was not fully paid. Taking the ordinary course of business, the proceeds of the goods, which in all exceeded, as we are satisfied, by a large sum, the amount of the debt, should, when the goods were so mixed and appropriated, have been first applied to the oldest mortgage. There is nothing which we have been able to discover in the record which indicates that complainant is not fairly entitled to be discharged from any further liability, and to have back her property.

The court below, while holding that defendant had made out no claim under the $775 mortgage, nevertheless left him at liberty to prosecute it. It was distinctly brought within the issues in this case, and testimony was given bearing upon it. We think nothing is due under it, and it must be decreed to be given up, as must also the mortgage for $1000. As the advance made by Highstone to redeem the McCann mortgage was solely justified by his holding the assignment of the subsequent $2000 mortgage, he is only entitled to hold the latter as security until this advance is repaid, but he can have no personal claim on complainant for that amount. This is the only claim which he has established as still uncanceled.

The decree must be reversed as to complainant, and she is entitled to a decree for the immediate cancellation and discharge of the two mortgages given by her to Highstone, and for the reassignment of the $2000 mortgage, and of the claim of Highstone arising out of the redemption, upon payment to him of the amount of the redemption money and ten per cent. interest from such redemption. In default of her so refunding within four months, Highstone to be at liberty to enforce the security for that amount, accounting to her for the balance, by sale under the decree in the cause in the usual manner of mortgage sales. Complainant to recover costs of both courts.

The other Justices concurred.